# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-4005

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| William T. Monnier, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: August 26, 2004
Filed: July 5, 2005

_____

Before LOKEN, Chief Judge, WOLLMAN, and BEAM, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

William Monnier appeals from his conviction and sentence for conspiracy to distribute 500 grams or more of methamphetamine and for distribution of less than 50 grams of methamphetamine that resulted in death, violations of 21 U.S.C. §§ 841 and 846. We affirm.

## I.

Testimony at trial established that Monnier regularly bought and sold methamphetamine. On the evening of April 15, 2001, Monnier and Rick Edwards met up with Brandy Stroud and nineteen-year-old Esperanza Mendoza. Monnier and

Edwards invited the women to join them in a motel room, to which Monnier brought methamphetamine. Mendoza smoked, snorted, and ate the methamphetamine. At Monnier's request, Edwards and Stroud departed the room, leaving Monnier and Mendoza by themselves. Stroud returned to the room several hours later to find Mendoza alone and extremely ill. Mendoza died shortly thereafter.

During Monnier's trial, the defense called Teresa James, who allegedly had visited the motel room the night that Mendoza died. James was sworn and took the witness stand, at which point the government suggested that she be advised of her Fifth Amendment rights. After this advisement, James declined to testify. The district court[1] refused Monnier's request that James state before the jury her reason for not testifying and subsequently denied Monnier's motion for a mistrial. Following Monnier's conviction, the district court denied his motion for judgment of acquittal and sentenced him to 360 months' imprisonment.

## II.

Monnier challenges the sufficiency of the evidence with respect to both counts on which he was convicted. We review the district court's denial of the motion for judgment of acquittal using the same standard as the district court. United States v. Blanton, 281 F.3d 771, 774 (8th Cir. 2002). "When considering whether there is sufficient evidence to support a conviction, we view the evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences." United States v. Exson, 328 F.3d 456, 460 (8th Cir. 2003) (internal quotes and citations omitted). We reverse only if the evidence, viewed in this light, is such that a reasonably minded jury would have a reasonable doubt as to the existence of any of the essential elements of the crime charged. Blanton, 281 F.3d at 774.

---

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

## A.

Monnier's conspiracy conviction requires that the government have proved beyond a reasonable doubt: (1) the existence of a conspiracy with an illegal purpose; (2) Monnier's awareness of the conspiracy; and (3) Monnier's knowingly becoming a part of that conspiracy. See United States v. Fitz, 317 F.3d 878, 881 (8th Cir. 2003). We conclude that the evidence was sufficient for a reasonably minded jury to convict Monnier for conspiracy to distribute at least 500 grams of methamphetamine: Rick Edwards testified that over the course of several months he and Monnier purchased from an out-of-town supplier between two and three pounds of methamphetamine for redistribution, Ed Imler testified that he sold Monnier about two pounds of methamphetamine over a three-month period and that Monnier resold some of this methamphetamine to Edwards, and three other witnesses testified that Monnier had arrangements with them to buy or sell methamphetamine.

## B.

Monnier next disputes his conviction for distributing methamphetamine that resulted in Mendoza's death. He argues that the government failed to "prove beyond a reasonable doubt that the drugs [he] allegedly gave Mendoza were actually enough to kill her" and he asserts that "a substantial possibility exists that someone else gave [Mendoza] the lethal dose and [his] dose was marginal." The district court instructed the jury that the government had to prove beyond a reasonable doubt that the methamphetamine Monnier provided to Mendoza produced her death "in a continuous sequence of events, and without which the result would not have occurred." This is akin to a proximate cause instruction. See, e.g., Racicky v. Farmland Indus., Inc., 328 F.3d 389, 396 (8th Cir. 2003) (defining proximate cause in a civil context as "a cause (1) that produces a result in a natural and continuous sequence and (2) without which the result would not have occurred"). We have held, however, that proximate cause is not required for a conviction under 21 U.S.C. § 841:

[Section 841(b)] is unambiguous and . . . giving effect to its plain meaning prohibits us from superimposing upon the statute a foreseeability or proximate cause requirement. From the statute's language, it is clear Congress intended to expose a defendant to a more severe minimum sentence *whenever* death or serious injury is a consequence of the victim's use of a controlled substance that has been manufactured or distributed by the defendant. We decline to hinder Congress's will, apparent from the face of the statute, through a judicial pronouncement that the statute requires more than it says.

United States v. McIntosh, 236 F.3d 968, 972 (8th Cir. 2001) (rejecting defendant's challenge that death or serious bodily injury must have been "reasonably foreseeable" to impose the statutory enhancement under 21 U.S.C. § 841(b)). See also United States v. Carbajal, 290 F.3d 277 (5th Cir. 2002). Accordingly, we reject Monnier's contention that the government had to prove that the methamphetamine he provided to Mendoza was "actually enough to kill her."

In any event, pursuant to the district court's instruction the jury found proximate cause beyond a reasonable doubt, which necessarily means that it found contributory cause. See BLACK'S LAW DICTIONARY 212 (7th ed. 1999) (defining "contributing cause" as "[a] factor that—though not the primary cause—plays a part in producing a result"). We conclude that the evidence satisfies either standard. Four medical experts testified that Mendoza died from toxic levels of methamphetamine ingested in the hours before her death. One of the government's witnesses testified that the only methamphetamine she saw in the motel room came from Monnier and that she saw Mendoza smoke, snort, and eat it. No witness testified seeing Mendoza use any methamphetamine in the hours before her death other than that supplied by Monnier. Accordingly, viewed in the light most favorable to the jury verdict, the evidence supports the finding that Mendoza's death "result[ed] from" the methamphetamine provided by Monnier. See 21 U.S.C. § 841(b)(1)(A).

## III.

Monnier challenges the district court's denial of his motion for a mistrial following Teresa James' refusal to testify. We review the district court's ruling for abuse of discretion. United States v. Hale, 1 F.3d 691, 694 (8th Cir. 1993). After being sworn before the jury, James decided, outside the presence of the jury, to invoke her Fifth Amendment right not to testify. The district court, over Monnier's objection, refused to require James to invoke her right in the presence of the jury. Instead, the court informed the jury: "Ms. James was sworn in as a witness. She then had an opportunity to consult with her attorney and based on the advice of her attorney she has declined to testify, so she will not be testifying in this case." Monnier argues that, despite the district court's explanation, a mistrial was warranted because "[h]aving a witness sworn and then disappear leaves the jury wondering what she might have said." We have held that "a defendant does not have the right to call a witness to the stand simply to force invocation of the right against self-incrimination in the presence of the jury." United States v. Doddington, 822 F.2d 818, 822 (8th Cir. 1987). This principle applies here, and we therefore find no abuse of discretion on the part of the district court.

## IV.

Prior to oral argument in this case, the Supreme Court decided Blakely v. Washington, 124 S.Ct. 2531 (2004) and we granted leave to the parties to file supplemental briefs on the effect of Blakely on Monnier's sentence. We now address Monnier's sentencing arguments in the light of the post-Blakely decisions in United States v. Booker, 125 S. Ct. 738 (2005), and United States v. Pirani, 406 F.3d 543, (8th Cir. 2005) (en banc). Because Monnier did not raise a Blakely or Booker challenge to the enhancement at sentencing, we review for plain error. Pirani, 406 F.3d at 549.

Monnier challenges the two-level upward adjustment that he received for obstruction of justice. To resolve this challenge, we conduct plain error review under

-5-

the four-part test of <u>United States v. Olano</u>, 507 U.S. 725 (1993). Pursuant to that test, before we can correct an error not raised at trial, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights. <u>Johnson v. United States</u>, 520 U.S. 461, 466-67 (1997). If all three conditions are met, we may remedy the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." <u>Id.</u>

The district court's enhancement for obstruction of justice was erroneous in light of <u>Booker</u> because it was imposed on the basis of judge-found facts in a mandatory guidelines regime. In these circumstances, the first two <u>Olano</u> factors are satisfied. <u>See</u> <u>Pirani</u>, 406 F.3d at 550. Whether the error affected Monnier's substantial rights is another matter. To satisfy this factor, "the defendant must show a 'reasonable probability,' based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." <u>Id.</u> at 552.

Absent the upward adjustment, Monnier would have been sentenced at an offense level of 38, with a corresponding sentencing range of 292-365 months. With the adjustment, his offense level of 40 resulted in a range of 360 months to life. At sentencing, the district court stated: "I think that under the guidelines I really don't have much choice, other than to do what I'm doing. The government is going to tell me to give you life imprisonment. I'm going to give you the minimum sentence." Sen. Tr. at 948. Notwithstanding the district court's comments and its decision to sentence Monnier at the low end of the range, the record as a whole does not suggest a reasonable probability that Monnier would have received a more favorable sentence had the district court considered a lower sentencing range. <u>See</u> <u>Pirani</u>, 406 F.3d at 553 ("[S]entencing at the bottom of the range is the norm for many judges, so it is insufficient, without more, to demonstrate a reasonable probability that the court

would have imposed a lesser sentence absent the <u>Booker</u> error"). We conclude that, given these circumstances, Monnier has not demonstrated prejudicial plain error.

      The judgment and sentence are affirmed.

_____