# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3602

_____

United States of America

*Plaintiff - Appellee*

v.

Marcus Andrew Burrage

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 17, 2012
Filed: August 6, 2012

_____

Before BYE, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Marcus Andrew Burrage of distribution of heroin and distribution of heroin resulting in death, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). The district court[1] sentenced him to 240 months on each count,

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

concurrently. Burrage appeals arguing the court erred by admitting hearsay testimony and denying his motions for judgment of acquittal and a new trial. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

On November 17, 2009, Breanne Brown – a confidential informant – called Officer Jamie Miller of the Central Iowa Drug Task Force. She said she could purchase heroin that day from "Lil C." Later that day Brown – who was cooperating with law enforcement after being found in possession of marijuana – conducted a controlled buy of heroin from Lil C. Officer Miller watched the buy. He testified at trial that he knew "Lil C" referred to Burrage and recognized him during the sale, but his written report did not list Burrage's name. An electronic device in Brown's purse recorded the transaction and transmitted the audio to the officers. The recording was played at trial. Burrage denied selling heroin to Brown and denied it was his voice on the recording.

Tammy Noragon Banka ("Noragon") testified that she accompanied her husband, Joshua Banka, as he purchased one gram of heroin from "Lil C" on April 14, 2010. Banka used some of the heroin almost immediately. He fell asleep and she helped him home. He woke up around midnight, using heroin then and again around 5:00 a.m., when Noragon went to sleep. Waking up around 10:30 a.m., she found Banka dead in the bathroom, seated on the toilet, slumped into the shower. She called the police. Officers from the Nevada (Iowa) Police Department and the Iowa Division of Criminal Investigations responded and investigated. They found drug paraphernalia and a number of narcotics and prescription medications, including alprazolam, clonazepam, oxycodone, baclofen, heroin, and marijuana. Noragon testified that Banka was a long-time, multiple drug user and that she saw him use marijuana and oxycodone the day before he died.

Believing Banka's death was related to heroin, the local officers contacted the Drug Task Force, providing them with Noragon's physical description of the person who sold heroin to her husband. Officer Miller sent Burrage's photograph. In a photo lineup conducted by local police, Noragon identified Burrage as the man who sold heroin to Banka. At trial, Noragon again identified Burrage as Lil C.

Dr. Eugene Q. Schwilke, a forensic toxicologist, conducted toxicology tests on Banka's blood and urine. His tests detected multiple drugs, including morphine (a metabolite[2] of heroin), 6-monoacetylmorphine (a metabolite of heroin), codeine (a likely impurity in the heroin), 7-aminoclonazepam (a metabolite of clonazepam), alprazolam, marijuana metabolites, and oxycodone. He testified that, in his opinion, heroin was a contributing factor to Banka's death, but he could not state that Banka would not have died if he had not taken heroin.

Dr. Jerri McLemore, with the State Medical Examiner's office, conducted Banka's autopsy. Relying on her physical examination of Banka and Dr. Schwilke's toxicology report, she certified the cause of death as "a mixed drug intoxication with the drugs contributing to death, including heroin, the oxycodone, the alprazolam and the clonazepam." She further testified, "The morphine, the breakdown product of the heroin, was the only drug that was above the therapeutic range." Dr. McLemore could not state that Banka would not have died if he had not taken heroin, but she did describe death without the heroin as "very less likely."

At the close of the government's evidence, Burrage orally moved for judgment of acquittal under Federal Rule of Criminal Procedure 29, challenging the sufficiency of the evidence to sustain a conviction on either count. The district court denied the

---

[2]Dr. Schwilke testified that a metabolite is what a drug breaks down into in the body.

motion.  Burrage orally renewed the motion at the close of his evidence.  The district court again denied the it.

The jury returned a guilty verdict on both counts.  Burrage moved for a new trial under Federal Rule of Criminal Procedure 33, alleging erroneous jury instructions and prosecutorial misconduct.  The district court denied the motion.

## II.

Burrage appeals the district court's denial of his motion for new trial.  This court reviews the denial of a motion for new trial for an abuse of discretion.  ***United States v. Louper-Morris***, 672 F.3d 539, 559 (8th Cir. 2012).  "Reversal of a denial of a motion for new trial is rare."  ***Id.***, *quoting **United States v. Perez***, 663 F.3d 387, 391 (8th Cir. 2011).

## A.

Burrage challenges the jury instructions related to 21 U.S.C. § 841(b)(1)(C), a penalty provision that increases the minimum sentence for distribution of heroin "if death or serious bodily injury *results from* the use of such substance." (emphasis added).  The district court instructed the jury:

INSTRUCTION NO. 10
ELEMENTS OF THE OFFENSE – COUNT TWO –
DISTRIBUTION OF HEROIN RESULTING IN DEATH

The crime of distributing heroin resulting in death, as charged in Count Two of the Indictment, has three essential elements, which are:
1. On or about April 14, 2010, the Defendant intentionally distributed heroin; and
2. At the time of the transfer, the Defendant knew that it was heroin; and

3.      A death resulted from the use of the heroin.

For you to find that a death resulted from the use of heroin, the Government must prove, beyond a reasonable doubt, that the heroin distributed by the Defendant was a contributing cause of Joshua Banka's death.  A contributing cause is a factor that, although not the primary cause, played a part in the death[.]

For you to find the Defendant guilty of the crime charged under Count Two the Government must prove all of these essential elements beyond a reasonable doubt; otherwise you must find the Defendant not guilty of this crime under Count Two.

"This court reviews a district court's jury instructions for abuse of discretion and its interpretation of law de novo." **Kahle v. Leonard**, 563 F.3d 736, 741 (8th Cir. 2009).  This court will affirm where the instructions, "taken as a whole, . . . fairly and adequately instruct the jurors on the applicable law."  **United States v. Spires**, 628 F.3d 1049, 1053 (8th Cir. 2011) (internal quotation marks and citations omitted).  "Notably, a defendant is not entitled to a particularly worded instruction."  **Id.** alterations and internal quotation marks omitted).  This court "will reverse only if an error in the instructions was prejudicial."  **United States v. Yielding**, 657 F.3d 688, 708 (8th Cir. 2011).

1.

Burrage argues that "results from" in § 841(b)(1)(C) requires a showing of "proximate cause."  At trial he requested three jury instructions to that effect.[3]  "A

_____

[3]Burrage's Proposed Jury Instruction No. 13:
### ELEMENTS OF THE OFFENSE – COUNT TWO – DISTRIBUTION OF HEROIN RESULTING IN DEATH
The crime of distributing heroin resulting in death, as charged in Count 2 of the indictment, has three elements, which are:

defendant is entitled to a proposed instruction that conveys the substance of his request if it is supported by the evidence in the case and is a correct statement of the law.'" ***United States v. Petters***, 663 F.3d 375, 384 (8th Cir. 2011) (internal quotation marks and alterations omitted), *quoting* ***United States v. Gary***, 341 F.3d 829, 834 (8th Cir. 2003).

---

> *One*, the defendant intentionally distributed heroin;
> *Two*, at the time of the transfer, the defendant knew that it was heroin; and
> *Three*, the use of the heroin was the proximate cause of a death.
> For you to find the defendant guilty of the crime charged under Count 2, the government must prove all of these essential elements beyond a reasonable doubt; otherwise you must find the defendant not guilty of this crime under Count 2.

Burrage's Proposed Jury Instruction No. 14:
### DEFINITION: RESULTING IN DEATH
The element "resulting in death" listed in Count 2 of the indictment, requires the government to prove beyond a reasonable doubt that the distribution of the heroin was the proximate cause of death.

Burrage's Proposed Jury Instruction No. 15:
### DEFINITION: PROXIMATE CAUSE
As used in these instructions, the term "proximate cause" means a cause of death that played a substantial part in bringing about the death. The death must have been either a direct result of or a reasonably probable consequence of the cause and except for the cause the death would not have occurred.

A cause may be a proximate cause of death, even though it operates in combination with the act of another or some natural cause, as long as the subject cause contributes substantially to producing the death.

-6-

The district court did not err in rejecting Burrage's proximate cause instructions, because they do not correctly state the law. In *United States v. McIntosh*, 236 F.3d 968 (8th Cir. 2001), this court held that a showing of "proximate cause" is not required under § 841(b)(1). *Id.* at 972-73. Burrage requests this court overrule *McIntosh*, but only the court sitting en banc can take that action. *See **Brock v. Astrue***, 674 F.3d 1062, 1065 (8th Cir. 2012).[4]

2.

Burrage contends that the district court erred by using "contributing cause" language to define the statute's causation element. However, the instruction is consistent with this court's statement that § 841(b)(1)'s "results from" requirement is met by a "contributing cause." ***United States v. Monnier***, 412 F.3d 859, 862 (8th Cir. 2005), *post-conviction relief granted as to sentencing by* 718 F. Supp. 2d 1040 (D. Neb. 2010). In *Monnier*, the jury, given an instruction "akin to a proximate cause instruction," convicted the defendant of distribution of methamphetamine that resulted in death in violation of § 841(b)(1)(A). The defendant appealed the sufficiency of the evidence. First, this court held that the proximate cause instruction did not accurately state the law after *McIntosh*. *Id.* at 861-62. However, it then affirmed the conviction because "pursuant to the district court's instruction the jury found proximate cause beyond a reasonable doubt, which necessarily means that it

---

[4]Every circuit to address the issue agrees with *McIntosh* on this point. *See **United States v. De La Cruz***, 514 F.3d 121, 138 (1st Cir. 2008); ***United States v. Robinson***, 167 F.3d 824, 830-31 (3d Cir. 1999); ***United States v. Patterson***, 38 F.3d 139, 144-45 (4th Cir. 1994); ***United States v. Houston***, 406 F.3d 1121, 1122-23 (9th Cir. 2005); ***United States v. Webb***, 655 F.3d 1238, 1250 (11th Cir. 2011); *cf. **United States v. Hatfield***, 591 F.3d 945, 950-51 (7th Cir. 2010) (noting "some misgivings about interpreting 'results from' in the statute to impose strict liability," but avoiding the issue because "the defendants [did] not challenge the interpretation of the statute as imposing strict liability on them for death or injury to recipients of their drugs").

found *contributory cause*." **Id.** at 862 (emphasis added). The court then defined "contributing cause" as "[a] factor that – though not the primary cause – plays a part in producing a result." **Id.**, *quoting* **Black's Law Dictionary** 212 (7th ed. 1999).

Burrage notes that the instructions used by the district court do not appear in the 2011 edition of the *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit*. However, "[t]he Model Instructions . . . are not binding on the district courts of this circuit, but are merely helpful suggestions to assist the district courts." **Bady v. Murphy-Kjos**, 628 F.3d 1000, 1004 (8th Cir. 2011) (alterations in *Bady*), *quoting* **United States v. Norton**, 846 F.2d 521, 525 (8th Cir. 1988).

Burrage also relies on *United States v. Hatfield*, 591 F.3d 945 (7th Cir. 2010). In that case, the Seventh Circuit expressly rejected a jury instruction adopting the "contributing cause" language from *Monnier*, endorsed a jury instruction using the statute's language without embellishment, reversed, and remanded for a new trial. **Id.** at 947-51. The Seventh Circuit expressed concern that the district court's elaboration on the statutory language may have confused the jury. **Id.** at 949. The *Hatfield* court distinguished *Monnier* because it "was not quoting from or approving a jury instruction." **Id.** Burrage urges this court to do the same.

Unlike the *Hatfield* court, this panel is bound by *Monnier*'s formulation of the "results from" standard. The jury instructions for Count Two fairly and adequately instructed the jurors. The district court did not abuse its discretion by including the "contributing clause" language. *See* **Yielding**, 657 F.3d at 708 (reviewing jury instructions that defined statutory terms for an abuse of discretion).

B.

Burrage also argues that he is entitled to a new trial because the prosecutor improperly remarked while cross-examining him – and again during closing arguments – that the voice on the audio recording of the controlled buy sounded like him.

During the direct examination of Burrage, his attorney asked, "Was that you on that recording?," referring to the recording of the controlled buy played earlier in the trial. He responded, "No, Ma'am." During cross-examination, the prosecutor played the tape and asked, "Mr. Burrage, the tone and inflection of the individual heard on that videotape selling drugs to Breanne Brown sounds an awful lot like you?" Burrage's counsel objected, the court overruled it, and the prosecutor repeated, "It sounds an awful lot like you, doesn't it?" Burrage denied it. The prosecutor continued: "You don't think that was in the same tone?," "The same inflection?," "The same pronunciation?," and "That's you on that tape isn't it?" Burrage answered each question: "No, sir."

During closing argument, the prosecutor stated:

> You know, one of the things that we got by his testimony is that you got to observe him other than just sitting at counsel table. You got to see how he talked, what his inflection was, his use of words and the English language, things along those lines. You were able to hear the inflection in his voice and things of that nature.
>
> And one of the things that they can't get past, no matter how they try and do it, is the audio tape of the first buy. And I'm going to play that for you, you've heard it a couple of times but I'm going to play it again.
>
> I'd ask that you do that now.

(Audio tape played in open court.)

Ladies and gentlemen, there's a reason why that individual we just heard on the audio tape of that transaction that occurred on November 17th of 2009 sounds like the defendant, why the tone is consistent, why the inflection is consistent, why the use of the English language is consistent. And the reason why it's consistent is because that's the defendant, Marcus Andrew Burrage, on that tape. He distributed that heroin to Breanne Brown on November 17th of 2009.

Burrage did not object at trial, but raised the issue in his post-verdict motion for a new trial.

This court reviews for an abuse of discretion the denial of a motion for a new trial based on prosecutorial misconduct. *United States v. Thomas*, 664 F.3d 217, 224 (8th Cir. 2011). "To reverse a conviction 'based on prosecutorial misconduct to which there was a proper objection, a defendant must show that (1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct affected the defendant's substantial rights so as to deprive him of a fair trial.'" *Id.*, *quoting United States v. Montgomery*, 635 F.3d 1074, 1096-97 (8th Cir. 2011). Because Burrage did not object to the prosecutor's comments during closing argument, the denial of the motion for a new trial as it relates to that comment is reviewed for plain error. *United States v. Kieffer*, 621 F.3d 825, 831 (8th Cir. 2010). To establish plain error, Burrage bears the burden of establishing that the district court's failure to grant him a new trial based on that comment was "(1) error, (2) that is plain, and (3) that affects substantial rights. Even if [Burrage] establishes all three plain-error factors, we may exercise our discretion to notice the forfeited error only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Martinson*, 419 F.3d 749, 752 (8th Cir. 2005) (internal quotations and citations omitted).

The district court did not abuse its discretion or commit plain error, because the prosecutor's comments were proper. By denying that the voice on the recording was his during direct examination, Burrage opened the door to further questions about it during cross-examination. *See* **Fed. R. Evid. 611(b)** ("Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility."). And, the prosecutor's leading question ("Mr. Burrage, the tone and inflection of the individual heard on that videotape selling drugs to Breanne Brown sounds an awful lot like you?") was appropriate on cross. *See* **Fed. R. Evid. 611(c)** ("Ordinarily, the court should allow leading questions . . . on cross-examination . . . ."). The prosecutor did not improperly comment on the evidence or testify as an expert witness.

The prosecutor's comments during closing were also proper. "A prosecutor must limit the closing argument to the evidence and the reasonable inferences that may be drawn from it." *United States v. Eagle*, 515 F.3d 794, 805 (8th Cir. 2008). By testifying at trial, Burrage gave the jury ample opportunity to hear his voice. A jury is competent to compare voices without expert testimony. *United States v. Samuels*, 543 F.3d 1013, 1015-16 (8th Cir. 2008) (holding that the jury "could judge for themselves" whether two voices were the same); *United States v. Donaldson*, 110 Fed. Appx. 603, 610 (6th Cir. 2004) (unpublished) (finding no prosecutorial misconduct where the prosecutor's closing argument invited the jury to compare recordings with the non-testifying defendant's voice heard during random outbursts throughout the trial); *United States v. Cambindo Valencia*, 609 F.2d 603, 640 (2d Cir. 1979) ("[V]oice identification is not generally considered to be an area where expertise is important.").

Burrage further contests that the prosecutor's question and comments breached a pre-trial agreement between the parties that no "earwitness" expert testimony would be offered. Because of this agreement – memorialized in an email exchange – Burrage did not seek funds to offer the testimony of his own expert earwitness.

-11-

However, the prosecutor did not breach the agreement. In the emails, the prosecutor agreed not to have "someone who just reviewed the audiotape com[e] in and say[] that [Burrage]'s voice is the voice on the tape." The prosecutor did not call any such witness.

The district court did not abuse its discretion in denying Burrage's motion for a new trial.

III.

A.

Burrage appeals the district court's denial of his motion for a judgment of acquittal. This court reviews de novo the denial of a motion for a judgment of acquittal based on the sufficiency of the evidence to sustain a conviction. ***United States v. Aldridge***, 664 F.3d 705, 715 (8th Cir. 2011).

> On review, evidence is viewed most favorably to the verdict, giving it the benefit of all reasonable inferences. Reversal is appropriate only where no reasonable jury could find all the elements beyond a reasonable doubt. This court does not weigh the credibility of the witnesses or the evidence. The jury has the sole responsibility to resolve conflicts or contradictions in testimony, and credibility determinations are resolved in favor of the verdict.

***Id.*** (citations omitted).

Burrage challenges the sufficiency of the evidence for each count. First, he argues that no reasonable jury could find beyond a reasonable doubt that he distributed heroin to Brown (an element of Count One) or Banka (an element of Count Two). Specifically, he challenges the credibility of the testimony of Brown,

the investigating officers, and Noragon. However, "a witness's credibility is for the jury to decide," *United States v. Thompson*, ___ F.3d ___, 2012 WL 3023471, at *6 (8th Cir. July 25, 2012), and "[t]he jury's credibility determinations are virtually unreviewable on appeal," *Aldridge*, 664 F.3d at 715. As described in Part I, there was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that he distributed heroin to Brown and Banka.

Burrage also asserts that no reasonable jury could find beyond a reasonable doubt that Banka's death resulted from the heroin distributed by Burrage (an element of Count Two). Burrage states that B's death "resulted from" a mixed drug intoxication, not the heroin. He insists that Banka's death could not have resulted from the heroin because Drs. Schwilke and McLemore could not testify that Banka would not have died if he had not used the heroin. However, both doctors testified that the heroin was a "contributing cause" of his death, which satisfies the *Monnier* standard. *Monnier*, 412 F.3d at 862. Further, Dr. McLemore testified that the heroin metabolite was the only drug present in levels above the therapeutic range and that death without the heroin was "very less likely." "[G]iving [the verdict] the benefit of all reasonable inferences," a reasonable jury could find Banka's death resulted from the heroin beyond a reasonable doubt. *Aldridge*, 664 F.3d at 715; *cf. United States v. Washington*, 596 F.3d 926, 942-44 (8th Cir. 2010) (finding sufficient evidence that death resulted from each of two drugs involved in a "mixed narcotic overdose" in order to support conviction on two separate counts (one for each drug) under 18 U.S.C. § 841(b)(1)(C)).

B.

According to Burrage, the district court should have granted a new trial because the verdict was against the weight of the evidence. "The district court has broad, but limited, discretion to grant or deny a motion for a new trial based on the sufficiency of the evidence, and it can weigh the evidence, disbelieve witnesses, and

grant a new trial even where there is substantial evidence to sustain the verdict." ***United States v. Vega***, 676 F.3d 708, 722 (8th Cir. 2012) (internal quotation marks omitted). However, Burrage did not preserve this issue for appeal by including it in his post-trial motion for a new trial.[5] Therefore, this court reviews the issue for plain error. *See **Martinson***, 419 F.3d at 752; **Fed. R. Crim. P. 52(b)** ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

To establish plain error, Burrage "bears the burden of establishing that the district court's failure to grant [him] a new trial [based on the weight of the evidence] sua sponte was (1) error, (2) that is plain, and (3) that affects substantial rights. Even if [Burrage] establishes all three plain-error factors, we may exercise our discretion to notice the forfeited error only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." ***Martinson***, 419 F.3d at 752 (internal quotations and citations omitted). Here, the district court did not err. The district court did not have the power to grant a motion for a new trial on grounds that were not raised by Burrage in his timely-filed motion under Federal Rule of Criminal Procedure 33. ***Id.*** ("[T]he district court did not err because it does not have the power under Rule 33 to order a new trial sua sponte."); ***United States v. Flynn***, 196 F.3d 927, 932 (8th Cir. 1999) ("[A]dditional grounds for relief raised after a timely-filed motion [for a new trial] are procedurally barred.").

---

[5]The fact that Burrage raised sufficiency of the evidence in his motion for a judgment of acquittal does not preserve the issue for review as a motion for new trial. **Martinson**, 419 F.3d at 752 ("Motions for judgment of acquittal are different motions with different substantive standards than motions for a new trial, and we will not construe the filing of one to preserve for our review claims of error relating to the other.").

IV.

Burrage argues that the district court abused its discretion by allowing inadmissible hearsay testimony. This court reviews "a district court's evidentiary rulings for abuse of discretion, according substantial deference to the district court's rulings." ***United States v. Van Elsen***, 652 F.3d 955, 958 (8th Cir. 2011). This court will only reverse "if an error was not harmless." ***United States v. White Bull***, 646 F.3d 1082, 1091 (8th Cir. 2011). "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." **Fed. R. Evid. 801(c)** (current version effective Dec. 1, 2011).

Officer Miller testified:

Q.    What was your reasoning in sending [Burrage's] photograph to Sergeant Martinez?

A.    The cause of death that we had been notified was possibly because of a heroin overdose.

[BURRAGE'S COUNSEL]: Objection, Your Honor, this is calling for –

. . .

It's all hearsay.

[PROSECUTOR]: He's testifying, Your Honor, not for the truth of the matter asserted but the subsequent conduct that he took based upon the information that he had received.

THE COURT: On that basis, the objection is overruled.

BY [PROSECUTOR]:

Q.    Why did you send that picture to the Nevada Police Department?

A.    I sent the photograph due to the fact of through the investigation it was learned that the individual died of a heroin overdose. Heroin is not real prevalent in our community. It's making a

-15-

resurgence, due I guess to the – due to the fact that working narcotics on a full-time basis there is a very limited – I guess a very limited supply base for individuals who are selling heroin. So knowing that we had maybe two individuals, one in particular, that was selling heroin, I sent a photograph of that individual to Sergeant Martinez.

The district court did not abuse its discretion because (1) the part of Officer Miller's testimony Burrage attacks on appeal is not an out-of-court statement, (2) even if it was, the statement was not offered for its truth, and (3) any error was harmless.

Burrage characterizes Officer Miller's response as "I'd heard Burrage was our city's main heroin dealer so I sent his picture." That does not accurately reflect his testimony, which recites his work in narcotics as the foundation for identifying Burrage as a possible suspect in Banka's death. There is no suggestion that Miller relied on an out-of-court statement for that conclusion. The only out-of-court statement potentially included in Miller's testimony is the information relayed to him by the Nevada police department about Banka's death and its link to heroin – a portion of the testimony Burrage does not challenge.

The testimony is also admissible because "[a]n out of court statement is not hearsay when offered to explain why an officer conducted an investigation in a certain way." *United States v. Brown*, 560 F.3d 754, 764 (8th Cir. 2009). Burrage believes that the purported nonhearsay reason masked the real purpose: "to try to prejudice the jury into believing the truth in the statement – that Burrage was a heroin dealer." However, "he did not argue at trial that the prejudicial effect of the evidence outweighed its nonhearsay value." *Id.*

Burrage asks that this court follow *United States v. Evans*, 216 F.3d 80 (D.C. Cir. 2000). An FBI agent there testified that his office "had received . . . information that Mr. Evans was involved in drug trafficking." *Id.* at 84. The record showed that

the FBI received that information from an informant who did not testify at trial and was not available for cross-examination. *Id.* at 85-86. Officer Miller's testimony here is not similar to the FBI agent's testimony in *Evans*, because it does not allude to some unavailable informant. Burrage had the opportunity to cross-examine Sergeant Martinez about his decision to contact the task force about Banka's death and, the opportunity to cross-examine Officer Miller about his decision to send the photograph to Martinez. *Cf. id.* at 85 ("The problem with hearsay is that it deprives the defendant of the opportunity to cross-examine the person who uttered the statement at issue.").

Even if the district court erred in admitting the testimony, the error was harmless. "A trial error is harmless 'if other evidence to the same effect was properly before the jury.'" **United States v. Gettel**, 474 F.3d 1081, 1090 (8th Cir. 2007), *quoting* **United States v. White**, 11 F.3d 1446, 1451 (8th Cir. 1993). In other testimony, Officer Miller explained his office's investigation and identification of Burrage as a potential heroin dealer. Sergeant Martinez and several other officers testified at trial about their investigation into Banka's death, its possible link with heroin, and their decision to contact Officer Miller's task force.

*\* \* \* \* \* \* \**

The judgment of the district court is affirmed.

_____