(Slip Opinion) OCTOBER TERM, 2013 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BURRAGE *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 12–7515. Argued November 12, 2013—Decided January 27, 2014

Long-time drug user Banka died following an extended binge that included using heroin purchased from petitioner Burrage. Burrage pleaded not guilty to a superseding indictment alleging, *inter alia*, that he had unlawfully distributed heroin and that "death . . . resulted from the use of th[at] substance"—thus subjecting Burrage to a 20-year mandatory minimum sentence under the penalty enhancement provision of the Controlled Substances Act, 21 U. S. C. §841(b)(1)(C). After medical experts testified at trial that Banka might have died even if he had not taken the heroin, Burrage moved for a judgment of acquittal, arguing that Banka's death could only "result from" heroin use if there was evidence that heroin was a but-for cause of death. The court denied the motion and, as relevant here, instructed the jury that the Government only had to prove that heroin was a contributing cause of death. The jury convicted Burrage, and the court sentenced him to 20 years. In affirming, the Eighth Circuit upheld the District Court's jury instruction.

*Held*: At least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable for penalty enhancement under §841(b)(1)(C) unless such use is a but-for cause of the death or injury. Pp. 4–15.

(a) Section 841(b)(1)(C)'s "death results" enhancement, which increased the minimum and maximum sentences to which Burrage was exposed, is an element that must be submitted to the jury and found beyond a reasonable doubt. See, *e.g., Alleyne* v. *United States*, 570 U. S. ___, ___. Pp. 4–5.

(b) Because the Controlled Substances Act does not define "results from," the phrase should be given its ordinary meaning. See *Asgrow*

*Seed Co.* v. *Winterboer*, 513 U. S. 179, 187.  Ordinarily, that phrase imposes a requirement of actual causality, *i.e.,* proof " 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct." *University of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. \_\_\_, \_\_\_.  Similar statutory phrases—"because of," see *id.,* at \_\_\_, " 'based on,' " *Safeco Ins. Co. of America* v. *Burr*, 551 U. S. 47, 63, and " 'by reason of,' "  *Gross* v. *FBL Financial Services, Inc.*, 557 U. S. 167, 176—have been read to impose a but-for causation requirement.  This Court declines to adopt the Government's permissive interpretation of "results from" to mean that use of a drug distributed by the defendant need only contribute to an aggregate force, *e.g.,* mixed-drug intoxication, that is itself a but-for cause of death.  There is no need to address a special rule developed for cases in which multiple sufficient causes independently, but concurrently, produce death, since there was no evidence that Banka's heroin use was an independently sufficient cause of his death.  And though Congress could have written §841(b)(1)(C) to make an act or omission a cause-in-fact if it was a "substantial" or "contributing" factor in producing death, Congress chose instead to use language that imports but-for causality.  Pp. 6–12.

(c) Whether adopting the but-for causation requirement or the Government's interpretation raises policy concerns is beside the point, for the Court's role is to apply the statute as written.  Pp. 12–14.

687 F. 3d 1015, reversed and remanded.

SCALIA, J., delivered the opinion of the Court, in which the ROBERTS, C. J., and KENNEDY, THOMAS, BREYER, and KAGAN, JJ., joined, and in which ALITO, J., joined as to all but Part III–B.  GINSBURG, J., filed an opinion concurring in the judgment, in which SOTOMAYOR, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 12–7515

_____

## MARCUS ANDREW BURRAGE, PETITIONER _v._ UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[January 27, 2014]

JUSTICE SCALIA delivered the opinion of the Court.*

The Controlled Substances Act imposes a 20-year mandatory minimum sentence on a defendant who unlawfully distributes a Schedule I or II drug, when "death or serious bodily injury results from the use of such substance." 21 U. S. C. §841(a)(1), (b)(1)(A)–(C) (2012 ed.). We consider whether the mandatory-minimum provision applies when use of a covered drug supplied by the defendant contributes to, but is not a but-for cause of, the victim's death or injury.

I

Joshua Banka, a long-time drug user, died on April 15, 2010, following an extended drug binge. The episode began on the morning of April 14, when Banka smoked marijuana at a former roommate's home. Banka stole oxycodone pills from the roommate before departing and later crushed, cooked, and injected the oxycodone. Banka and his wife, Tammy Noragon Banka (Noragon), then met with petitioner Marcus Burrage and purchased one gram

———————

*JUSTICE ALITO joins all but Part III–B of this opinion.

of heroin from him. Banka immediately cooked and in-jected some of the heroin and, after returning home, in-jected more heroin between midnight and 1 a.m. on April 15. Noragon went to sleep at around 5 a.m., shortly after witnessing Banka prepare another batch of heroin. When Noragon woke up a few hours later, she found Banka dead in the bathroom and called 911. A search of the couple's home and car turned up syringes, 0.59 grams of heroin, alprazolam and clonazepam tablets, oxycodone pills, a bottle of hydrocodone, and other drugs.

Burrage pleaded not guilty to a superseding indictment alleging two counts of distributing heroin in violation of §841(a)(1). Only one of those offenses, count 2, is at issue here. (Count 1 related to an alleged distribution of heroin five months earlier than the sale to Banka.) Count 2 alleged that Burrage unlawfully distributed heroin on April 14, 2010, and that "death . . . resulted from the use of th[at] substance"—thus subjecting Burrage to the 20-year mandatory minimum of §841(b)(1)(C).

Two medical experts testified at trial regarding the cause of Banka's death. Dr. Eugene Schwilke, a forensic toxicologist, determined that multiple drugs were present in Banka's system at the time of his death, including heroin metabolites, codeine, alprazolam, clonazepam metab-olites, and oxycodone. (A metabolite is a "product of metabolism," Webster's New International Dictionary 1544 (2d ed. 1950), or, as the Court of Appeals put it, "what a drug breaks down into in the body," 687 F. 3d 1015, 1018, n. 2 (CA8 2012).) Although morphine, a heroin metabolite, was the only drug present at a level above the therapeutic range—*i.e.*, the concentration normally present when a person takes a drug as prescribed—Dr. Schwilke could not say whether Banka would have lived had he not taken the heroin. Dr. Schwilke nonetheless concluded that heroin "was a contributing factor" in Banka's death, since it interacted with the other drugs to

cause "respiratory and/or central nervous system depres-sion." App. 196. The heroin, in other words, contributed to an overall effect that caused Banka to stop breathing. Dr. Jerri McLemore, an Iowa state medical examiner, came to similar conclusions. She described the cause of death as "mixed drug intoxication" with heroin, oxycodone, alprazolam, and clonazepam all playing a "contributing" role. *Id.*, at 157. Dr. McLemore could not say whether Banka would have lived had he not taken the heroin, but observed that Banka's death would have been "[v]ery less likely." *Id.,* at 171.

The District Court denied Burrage's motion for a judg-ment of acquittal, which argued that Banka's death did not "result from" heroin use because there was no evidence that heroin was a but-for cause of death. *Id.,* at 30. The court also declined to give Burrage's proposed jury instruc-tions regarding causation. One of those instructions would have required the Government to prove that heroin use "was the proximate cause of [Banka's] death." *Id.,* at 236. Another would have defined proximate cause as "a cause of death that played a substantial part in bring-ing about the death," meaning that "[t]he death must have been either a direct result of or a reasonably probable consequence of the cause and except for the cause the death would not have occurred." *Id.,* at 238. The court instead gave an instruction requiring the Government to prove "that the heroin distributed by the Defendant was a contributing cause of Joshua Banka's death." *Id.,* at 241–242. The jury convicted Burrage on both counts, and the court sentenced him to 20 years' imprisonment, consistent with §841(b)(1)(C)'s prescribed minimum.

The Court of Appeals for the Eighth Circuit affirmed Burrage's convictions. 687 F. 3d 1015. As to the causation-in-fact element of count 2, the court held that the District Court's contributing-cause instruction was con-sistent with its earlier decision in *United States* v. *Mon-*

*nier*, 412 F. 3d 859, 862 (CA8 2005). See 687 F. 3d, at 1021. As to proximate cause, the court held that Burrage's proposed instructions "d[id] not correctly state the law" because "a showing of 'proximate cause' is not required." *Id.,* at 1020 (quoting *United States* v. *McIntosh*, 236 F. 3d 968, 972–973 (CA8 2001)).

We granted certiorari on two questions: Whether the defendant may be convicted under the "death results" provision (1) when the use of the controlled substance was a "contributing cause" of the death, and (2) without separately instructing the jury that it must decide whether the victim's death by drug overdose was a foreseeable result of the defendant's drug-trafficking offense. 569 U. S. ___ (2013).

## II

As originally enacted, the Controlled Substances Act, 84 Stat. 1242, 21 U. S. C. §801 *et seq.*, "tied the penalties for drug offenses to both the type of drug and the quantity involved, with no provision for mandatory minimum sentences." *DePierre* v. *United States*, 564 U. S. ___, ___ (2011) (slip op., at 3–4). That changed in 1986 when Congress enacted the Anti-Drug Abuse Act, 100 Stat. 3207, which redefined the offense categories, increased the maximum penalties and set minimum penalties for many offenders, including the "death results" enhancement at issue here. See *id.*, at 3207–4. With respect to violations involving distribution of a Schedule I or II substance (the types of drugs defined as the most dangerous and addictive[1]) the Act imposes sentences ranging from 10 years to

_____

[1] Schedule I drugs, such as heroin, have "a high potential for abuse," "no currently accepted medical use in treatment in the United States," and "a lack of accepted safety" even "under medical supervision." §812(b)(1). Schedule II drugs, such as methamphetamine, likewise have "a high potential for abuse" and a propensity to cause "severe psychological or physical dependence" if misused. 21 U. S. C. §812(b)(2).

life imprisonment for large-scale distributions, §841(b)(1)(A), from 5 to 40 years for medium-scale distributions, §841(b)(1)(B), and not more than 20 years for smaller distributions, §841(b)(1)(C), the type of offense at issue here. These default sentencing rules do not apply, however, when "death or serious bodily injury results from the use of [the distributed] substance." §841(b)(1)(A)–(C). In those instances, the defendant "shall be sentenced to a term of imprisonment which . . . shall be not less than twenty years or more than life," a substantial fine, "or both."[2] *Ibid.*

Because the "death results" enhancement increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt. See *Alleyne* v. *United States*, 570 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 14–15); *Apprendi* v. *New Jersey*, 530 U. S. 466, 490 (2000). Thus, the crime charged in count 2 of Burrage's superseding indictment has two principal elements: (i) knowing or intentional distribution of heroin, §841(a)(1),[3] and (ii) death caused by ("resulting from") the use of that drug, §841(b)(1)(C).

———————

[2] Although this language, read literally, suggests that courts may impose a fine *or* a prison term, it is undisputed here that the "death results" provision mandates a prison sentence. Courts of Appeals have concluded, in effect, that the "or" is a scrivener's error, see, *e.g.*, *United States* v. *Musser*, 856 F. 2d 1484, 1486 (CA11 1988) (*per curiam*). The best evidence of that is the concluding sentence of §841(b)(1)(C), which states that a court "shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph *which provide for a mandatory term of imprisonment if death or serious bodily injury results*." (Emphasis added.)

[3] Violation of §841(a)(1) is thus a lesser included offense of the crime charged in count 2. It is undisputed that Burrage is guilty of that lesser included offense.

### III
### A

The law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause. H. Hart & A. Honoré, Causation in the Law 104 (1959). When a crime requires "not merely conduct but also a specified result of conduct," a defendant generally may not be convicted unless his conduct is "both (1) the actual cause, and (2) the 'legal' cause (often called the 'proximate cause') of the result." 1 W. LaFave, Substantive Criminal Law §6.4(a), pp. 464–466 (2d ed. 2003) (hereinafter LaFave); see also ALI, Model Penal Code §2.03, p. 25 (1985). Those two categories roughly coincide with the two questions on which we granted certiorari. We find it necessary to decide only the first: whether the use of heroin was the actual cause of Banka's death in the sense that §841(b)(1)(C) requires.

The Controlled Substances Act does not define the phrase "results from," so we give it its ordinary meaning. See *Asgrow Seed Co.* v. *Winterboer*, 513 U. S. 179, 187 (1995). A thing "results" when it "[a]rise[s] as an effect, issue, or outcome *from* some action, process or design." 2 The New Shorter Oxford English Dictionary 2570 (1993). "Results from" imposes, in other words, a requirement of actual causality. "In the usual course," this requires proof "'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct." *University of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. ___, ___ (2013) (slip op., at 5–6) (quoting Restatement of Torts §431, Comment *a* (1934)). The Model Penal Code reflects this traditional understanding; it states that "[c]onduct is the cause of a result" if "it is an antecedent but for which the result in question would not have occurred." §2.03(1)(a). That formulation represents "*the minimum* requirement for a finding of causation when a crime is defined in terms of conduct causing a particular

result." *Id.*, Explanatory Note (emphasis added); see also *United States* v. *Hatfield*, 591 F. 3d 945, 948 (CA7 2010) (but for "is the minimum concept of cause"); *Callahan* v. *Cardinal Glennon Hospital*, 863 S. W. 2d 852, 862 (Mo. 1993) (same).

Thus, "where A shoots B, who is hit and dies, we can say that A [actually] caused B's death, since but for A's conduct B would not have died." LaFave 467–468 (italics omitted). The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back. Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived. See, *e.g., State* v. *Frazier*, 339 Mo. 966, 974–975, 98 S. W. 2d 707, 712–713 (1936).

This but-for requirement is part of the common understanding of cause. Consider a baseball game in which the visiting team's leadoff batter hits a home run in the top of the first inning. If the visiting team goes on to win by a score of 1 to 0, every person competent in the English language and familiar with the American pastime would agree that the victory resulted from the home run. This is so because it is natural to say that one event is the outcome or consequence of another when the former would not have occurred but for the latter. It is beside the point that the victory also resulted from a host of *other* necessary causes, such as skillful pitching, the coach's decision to put the leadoff batter in the lineup, and the league's decision to schedule the game. By contrast, it makes little sense to say that an event resulted from or was the outcome of some earlier action if the action merely played a nonessential contributing role in producing the event. If the visiting team wound up winning 5 to 2 rather than

1 to 0, one would be surprised to read in the sports page that the victory resulted from the leadoff batter's early, non-dispositive home run.

Where there is no textual or contextual indication to the contrary, courts regularly read phrases like "results from" to require but-for causality. Our interpretation of statutes that prohibit adverse employment action "because of" an employee's age or complaints about unlawful workplace discrimination is instructive. Last Term, we addressed Title VII's antiretaliation provision, which states in part:

> "It shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . *because* he has opposed any practice made an unlawful employment practice by this subchapter, or *because* he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U. S. C. §2000e–3(a) (2006 ed.) (emphasis added).

Given the ordinary meaning of the word "because," we held that §2000e–3(a) "require[s] proof that the desire to retaliate was [a] but-for cause of the challenged employment action." *Nassar*, *supra*, at ___ (slip op., at 11–12). The same result obtained in an earlier case interpreting a provision in the Age Discrimination in Employment Act that makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U. S. C. §623(a)(1) (emphasis added). Relying on dictionary definitions of "[t]he words 'because of'"—which resemble the definition of "results from" recited above—we held that "[t]o establish a disparate-treatment claim under the plain language of [§623(a)(1)] . . . a plaintiff must prove that age was [a] 'but for' cause of the employer's adverse decision." *Gross* v. *FBL Financial*

*Services, Inc.*, 557 U. S. 167, 176 (2009).[4]

Our insistence on but-for causality has not been re- stricted to statutes using the term "because of." We have, for instance, observed that "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship," *Safeco Ins. Co. of America* v. *Burr*, 551 U. S. 47, 63 (2007), and that "the phrase, 'by reason of,' requires at least a showing of 'but for' causation," *Gross*, *supra*, at 176 (citing *Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U. S. 639, 653–654 (2008)). See also *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258, 265–268 (1992) (explaining that a statute permitting recovery for injuries suffered "'by reason of'" the defendant's unlawful conduct "re- quire[s] a showing that the defendant's violation . . . was," among other things, "a 'but for' cause of his injury"). State courts, which hear and decide the bulk of the Nation's criminal matters, usually interpret similarly worded crim- inal statutes in the same manner. See, *e.g.*, *People* v. *Wood*, 276 Mich. App. 669, 671, 741 N. W. 2d 574, 575–578 (2007) (construing the phrase "[i]f the violation results in the death of another individual" to require proof of but-for causation (emphasis deleted)); *State* v. *Hennings*, 791 N. W. 2d 828, 833–835 (Iowa 2010) (statute prohibiting "'offenses . . . committed against a person or a person's property because of the person's race'" or other protected trait requires discriminatory animus to be a but-for cause of the offense); *State* v. *Richardson*, 295 N. C. 309, 322–

———————

[4] *Price Waterhouse* v. *Hopkins*, 490 U. S. 228 (1989), is not to the con- trary. The three opinions of six Justices in that case did not eliminate the but-for-cause requirement imposed by the "because of" provision of 42 U. S. C. §2000e–2(a), but allowed a showing that discrimination was a "motivating" or "substantial" factor to shift the burden of persuasion to the employer to establish the absence of but-for cause. See *Univer- sity of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 7–10). Congress later amended the statute to dispense with but-for causality. Civil Rights Act of 1991, Tit. I, §107(a), 105 Stat. 1075 (codified at 42 U. S. C. §2000e–2(m)).

323, 245 S. E. 2d 754, 763 (1978) (statute requiring suppression of evidence "'obtained as a result of'" police misconduct "requires, at a minimum," a but-for causal relationship between the misconduct and collection of the evidence).

In sum, it is one of the traditional background principles "against which Congress legislate[s]," *Nassar*, 570 U. S., at ___ (slip op., at 6–7), that a phrase such as "results from" imposes a requirement of but-for causation. The Government argues, however, that distinctive problems associated with drug overdoses counsel in favor of dispensing with the usual but-for causation requirement. Addicts often take drugs in combination, as Banka did in this case, and according to the National Center for Injury Prevention and Control, at least 46 percent of overdose deaths in 2010 involved more than one drug. See Brief for United States 28–29. This consideration leads the Government to urge an interpretation of "results from" under which use of a drug distributed by the defendant need not be a but-for cause of death, nor even independently sufficient to cause death, so long as it contributes to an aggregate force (such as mixed-drug intoxication) that is itself a but-for cause of death.

In support of its argument, the Government can point to the undoubted reality that courts have not *always* required strict but-for causality, even where criminal liability is at issue. The most common (though still rare) instance of this occurs when multiple sufficient causes independently, but concurrently, produce a result. See *Nassar, supra*, at ___ (slip op., at 6); see also LaFave 467 (describing these cases as "unusual" and "numerically in the minority"). To illustrate, if "A stabs B, inflicting a fatal wound; while at the same moment X, acting independently, shoots B in the head . . . also inflicting [a fatal] wound; and B dies from the combined effects of the two wounds," A will generally be liable for homicide even

though his conduct was not a but-for cause of B's death (since B would have died from X's actions in any event). *Id.*, at 468 (italics omitted). We need not accept or reject the special rule developed for these cases, since there was no evidence here that Banka's heroin use was an independently sufficient cause of his death. No expert was prepared to say that Banka would have died from the heroin use alone.

Thus, the Government must appeal to a second, less demanding (but also less well established) line of authority, under which an act or omission is considered a cause-in-fact if it was a "substantial" or "contributing" factor in producing a given result. Several state courts have adopted such a rule, see *State* v. *Christman*, 160 Wash. App. 741, 745, 249 P. 3d 680, 687 (2011); *People* v. *Jennings*, 50 Cal. 4th 616, 643, 237 P. 3d 474, 496 (2010); *People* v. *Bailey*, 451 Mich. 657, 676–678, 549 N. W. 2d 325, 334–336 (1996); *Commonwealth* v. *Osachuk*, 43 Mass. App. 71, 72–73, 681 N. E. 2d 292, 294 (1997), but the American Law Institute declined to do so in its Model Penal Code, see ALI, 39th Annual Meeting Proceedings 135–141 (1962); see also Model Penal Code §2.03(1)(a). One prominent authority on tort law asserts that "a broader rule . . . has found general acceptance: The defendant's conduct is a cause of the event if it was a material element and a substantial factor in bringing it about." W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts §41, p. 267 (5th ed. 1984) (footnote omitted). But the authors of that treatise acknowledge that, even in the tort context, "[e]xcept in the classes of cases indicated" (an apparent reference to the situation where each of two causes is independently effective) "no case has been found where the defendant's act could be called a substantial factor when the event would have occurred without it." *Id.,* at 268. The authors go on to offer an alternative rule—functionally identical to the one the Government

argues here—that "[w]hen the conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a but-for cause of the event, and application of the but-for rule to them individually would absolve all of them, the conduct of each is a cause in fact of the event." *Ibid.* Yet, as of 1984, "no judicial opinion ha[d] approved th[at] formulation." *Ibid.*, n. 40. The "death results" enhancement became law just two years later.

We decline to adopt the Government's permissive interpretation of §841(b)(1). The language Congress enacted requires death to "result from" use of the unlawfully distributed drug, not from a combination of factors to which drug use merely contributed. Congress could have written §841(b)(1)(C) to impose a mandatory minimum when the underlying crime "contributes to" death or serious bodily injury, or adopted a modified causation test tailored to cases involving concurrent causes, as five States have done, see Ala. Code §13A–2–5(a) (2005); Ark. Code Ann. §5–2–205 (2006); Me. Rev. Stat. Ann., Tit. 17–A, §33 (2006); N. D. Cent. Code Ann. §12.1–02–05 (Lexis 2012); Tex. Penal Code Ann. §6.04 (West 2011). It chose instead to use language that imports but-for causality. Especially in the interpretation of a criminal statute subject to the rule of lenity, see *Moskal* v. *United States*, 498 U. S. 103, 107–108 (1990), we cannot give the text a meaning that is different from its ordinary, accepted meaning, and that disfavors the defendant.

B

The Government objects that the ordinary meaning of "results from" will "unduly limi[t] criminal responsibility" and "cannot be reconciled with sound policy." Brief for United States 24. We doubt that the requirement of but-for causation for this incremental punishment will prove a policy disaster. A cursory search of the Federal Reporter

reveals that but-for causation is not nearly the insuperable barrier the Government makes it out to be. See, *e.g., United States* v. *Krieger*, 628 F. 3d 857, 870–871 (CA7 2010) (affirming "death results" conviction based on expert testimony that, although the victim had several drugs in her system, the drug distributed by the defendant was a but-for cause of death); *United States* v. *Webb*, 655 F. 3d 1238, 1254–1255 (CA11 2011) (*per curiam*) (same). Moreover, even when the prosecution is unable to prove but-for causation, the defendant will still be liable for violating §841(a)(1) and subject to a substantial default sentence under §841(b)(1).

Indeed, it is more likely the Government's proposal that "cannot be reconciled with sound policy," given the need for clarity and certainty in the criminal law. The judicial authorities invoking a "substantial" or "contributing" factor test in criminal cases differ widely in their application of it. Compare *Wilson* v. *State*, 24 S. W. 409, 410 (Tex. Crim. App. 1893) (an act is an actual cause if it "contributed materially" to a result, even if other concurrent acts would have produced that result on their own), with *Cox* v. *State*, 305 Ark. 244, 248, 808 S. W. 2d 306, 309 (1991) (causation cannot be found where other concurrent causes were clearly sufficient to produce the result and the defendant's act was clearly insufficient to produce it (applying Ark. Code Ann. §5–2–205 (1987)).[5] Here the Government is uncertain about the precise application of the test that it proposes. Taken literally, its "contributing-cause" test would treat as a cause-in-fact every act or omission that makes a positive incremental contribution,

---

[5] Some cases apply what they call a "substantial factor" test only when multiple independently sufficient causes "operat[e] together to cause the result." *Eversley* v. *Florida*, 748 So. 2d 963, 967 (Fla. 1999); see also *Callahan* v. *Cardinal Glennon Hospital*, 863 S. W. 2d 852, 862–863 (Mo. 1993). We will not exaggerate the confusion by counting these as genuine "substantial factor" cases.

however small, to a particular result. See Brief for State of Alaska et al. as *Amici Curiae* 20; see also Black's Law Dictionary 250 (9th ed. 2009) (defining "contributing cause" as "[a] factor that—though not the primary cause—plays a part in producing a result"). But at oral argument the Government insisted that its test excludes causes that are "not important enough" or "too insubstantial." Tr. of Oral Arg. 28. Unsurprisingly, it could not specify how important or how substantial a cause must be to qualify. See *id.,* at 41–42. Presumably the lower courts would be left to guess. That task would be particularly vexing since the evidence in §841(b)(1) cases is often expressed in terms of probabilities and percentages. One of the experts in this case, for example, testified that Banka's death would have been "[v]ery less likely" had he not used the heroin that Burrage provided. App. 171. Is it sufficient that use of a drug made the victim's death 50 percent more likely? Fifteen percent? Five? Who knows. Uncertainty of that kind cannot be squared with the beyond-a-reasonable-doubt standard applicable in criminal trials or with the need to express criminal laws in terms ordinary persons can comprehend. See *United States* v. *L. Cohen Grocery Co.*, 255 U. S. 81, 89–90 (1921).

But in the last analysis, these always-fascinating policy discussions are beside the point. The role of this Court is to apply the statute as it is written—even if we think some other approach might "'accor[d] with good policy.'" *Commissioner* v. *Lundy*, 516 U. S. 235, 252 (1996) (quoting *Badaracco* v. *Commissioner*, 464 U. S. 386, 398 (1984)). As we have discussed, it is written to require but-for cause.

\*　　\*　　\*

We hold that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant

cannot be liable under the penalty enhancement provision of 21 U. S. C. §841(b)(1)(C) unless such use is a but-for cause of the death or injury. The Eighth Circuit affirmed Burrage's conviction based on a markedly different understanding of the statute, see 687 F. 3d, at 1020–1024, and the Government concedes that there is no "evidence that Banka would have lived but for his heroin use," Brief for United States 33. Burrage's conviction with respect to count 2 of the superseding indictment is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

─────────────

No. 12–7515

─────────────

## MARCUS ANDREW BURRAGE, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[January 27, 2014]

JUSTICE GINSBURG, with whom JUSTICE SOTOMAYOR joins, concurring in the judgment.

For reasons explained in my dissenting opinion in *University of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. \_\_\_, \_\_\_ (2013), I do not read "because of" in the context of antidiscrimination laws to mean "solely because of." See *id.,* at \_\_\_–\_\_\_, \_\_\_–\_\_\_ (slip op., at 20–21, 23–24). And I do not agree that words "appear[ing] in two or more legal rules, and so in connection with more than one purpose, ha[ve] and should have precisely the same scope in all of them." Cook, "Substance" and "Procedure" in the Conflict of Laws, 42 Yale L. J. 333, 337 (1933). But I do agree that "in the interpretation of a criminal statute subject to the rule of lenity," where there is room for debate, one should not choose the construction "that disfavors the defendant." *Ante*, at 12. Accordingly, I join the Court's judgment.