[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17567
Non-Argument Calendar

_____

D.C. Docket No. 9:16-cr-80071-KAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER MASSENA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 15, 2017)

Before WILSON, MARTIN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty to five counts and going to trial on one count, Christopher Massena appeals his conviction at trial and 360-month sentence for distributing a detectable amount of a controlled substance, fentanyl, resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  First, Massena argues that the government was required to show that he intended to cause the death of C.H., the victim, and the district court did not properly instruct the jury as to this element of intent.  Second, he argues that, with circumstantial evidence only, the government did not present sufficient evidence to support his conviction, because it failed to show that he was "Slim" and that he was the source of the drugs that killed C.H.  Finally, Massena argues that his 360-month sentence was substantively unreasonable because he could be rehabilitated, he had an untreated substance abuse problem of his own, and the government clouded the district court's judgment during sentencing by highlighting the general rise of opioid-related deaths in Palm Beach County.  After careful review, we affirm.

I.

The interpretation of criminal statutes presents a question of law, which we review de novo.  *United States v. Rojas*, 718 F.3d 1317, 1319 (11th Cir. 2013) (per curiam).  We also review de novo whether jury instructions misstate the law or "mislead the jury to the prejudice of the party who objects to them."  *United States v. Campa*, 529 F.3d 980, 992 (11th Cir. 2008).

2

We review challenges to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). We will not overturn a guilty verdict unless, based on the record evidence, no trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005). The government may rely on circumstantial evidence, as long as reasonable inferences, and not speculation, support the jury's verdict. *United States v. Perez-Tosta*, 36 F.3d 1552, 1557 (11th Cir. 1994). A defendant's identification can also be established by inference and circumstantial evidence. *United States v. Cooper*, 733 F.2d 91, 92 (11th Cir. 1984).

We review the reasonableness of a sentence under a deferential, abuse-of-discretion standard of review. *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). In making our determination, we assess the totality of the circumstances and the 18 U.S.C. § 3553(a) sentencing factors. *Id.* at 51, 128 S. Ct. at 597. The district court is permitted to "attach great weight to one factor over others." *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014) (internal quotation marks omitted). We ordinarily expect a sentence that is within the guideline range to be reasonable. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008). We will only vacate a sentence if, upon review, "we are left with the definite and firm conviction that the district court committed a clear error of

3

judgment in weighing the § 3553(a) factors." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted).  The party challenging the sentence bears the burden of showing that it is unreasonable. *United States v. Langston*, 590 F.3d 1226, 1236 (11th Cir. 2009).

We will address Massena's intent argument, then turn to the sufficiency of the evidence, before concluding with whether Massena's sentence was substantively reasonable.

## II.

The district court did not err by not requiring the government to prove that Massena had the intent to cause C.H.'s death and by not instructing the jury regarding that intent requirement.  We have held that unlike § 841(a), which makes it "unlawful for any person *knowingly or intentionally* . . . [to] distribute . . . a controlled substance,"[1] § 841(b) which prescribes the penalties for violations of § 841(a), "imposes no *mens rea* requirement."  *United States v. Sanders*, 668 F.3d 1298, 1310 (11th Cir. 2012) (per curiam).  One of the penalties § 841(b) prescribes is an increased statutory minimum where death results from the distribution of a Schedule II controlled substance, which includes fentanyl. [2]

---

[1] 21 U.S.C. § 841(a) (emphasis added).

[2] A violation of § 841(a) involving a schedule II controlled substance is punishable by up to 20 years of imprisonment, but where "death or serious bodily injury results from the use of such substance," the statutory penalty range increases to 20 years to life imprisonment.  21 U.S.C. §§ 841(b)(1)(C), 812.

Massena is incorrect that the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151 (2013), supports his argument. *Alleyne* addressed only what facts were required to be proved to a jury, not what mens rea requirement applied to trigger the statutory minimum. *Id*. at ___, 133 S. Ct. at 2162. Further, in a later case, *Burrage v. United States*, 571 U.S. ___, 134 S. Ct. 881 (2014), the Court cited *Alleyne* and explained that the "two principal elements" of a violation of § 841(a)(1) and (b)(1)(C) are "(i) *knowing or intentional* distribution of [a controlled substance] . . . and (ii) death caused by ('resulting from') the use of that drug." *Id*. at ___, 134 S. Ct. at 887 (emphasis added). *Burrage* did not include a "knowing or intentional" requirement for the resulting death element. *See id.*

Accordingly, the district court did not err in its intent determinations and therefore did not impermissibly lower the government's burden of proof.

### III.

The government presented sufficient evidence to convict Massena, because there was a reasonable basis in the record for the jury to conclude that Massena was the "Slim" that sold C.H. the drugs that resulted in his death. While Massena is correct that a substantial amount of the government's evidence is circumstantial, the government is permitted to rely on circumstantial evidence to prove Massena's

5

identity, as long as reasonable inferences support the jury's verdict. *Perez-Tosta*, 36 F.3d at 1557; *Cooper*, 733 F.2d at 92.

First, there was sufficient evidence from which a reasonable jury could have concluded that Massena was Slim. Special Agent Jason Bronson received a call from Slim after texting the number associated with that contact in C.H.'s phone. F. Hernandez, C.H.'s father, and Thomas Rollins, C.H.'s brother-in-law, heard C.H.'s cell phone ring with calls from Slim and saw text messages from Slim. Further, Detective Joseph Noyes saw an outgoing phone call on C.H.'s phone to Slim.

The government also presented evidence that when Special Agent Bronson arranged a drug transaction with Slim via phone and text, Massena was the one who showed up with the drugs. In fact, Special Agent Bronson arranged four separate drug transactions with Slim and then a final meeting to execute Massena's arrest. Massena did not object at any time to being called Slim. When an unknown female answered Special Agent Bronson's call to the same number he used in correspondence with Slim, it was clear that she knew who Slim was, and she said that he would return the call right away. Then, from jail Massena spoke with his girlfriend over the phone and acknowledged that Special Agent Bronson must have received his number from C.H. Even though the phone associated with Slim's number was not registered to Massena, a jury still could have inferred from all of this circumstantial evidence that Massena was Slim.

6

Second, there was sufficient evidence from which a reasonable jury could have concluded that Massena was the source of the drugs that killed C.H. Specifically, the government presented evidence from which a jury could have inferred that, on February 18, 2016, C.H. purchased drugs from Massena that caused his death. The evidence of text messages between C.H. and his ex-fiancée Katie Ames and Ames's testimony at trial showed that C.H. intended to purchase caps of heroin and bars of Xanax from Massena on the evening of February 18, "pop a bar as soon as [he] get[s] them and then drink when [he] get[s] home and smoke a cap," and then talk on Skype with Ames "[a]round 9 if everything goes well with Slim." The text messages between C.H. and Massena on February 18 showed that C.H. intended to purchase four caps and three bars from Massena that evening but agreed to four caps at Massena's suggestion "because the guy wit the sticks not picking up."

The text messages between C.H. and Massena on February 18 also showed that Massena had agreed to front him the drugs for later payment. A call between C.H. and Special Agent Bronson confirmed this, because Special Agent Bronson offered to pay C.H.'s debt for three capsules, and Massena corrected him and said C.H. owed him for four. Testimony from Detective Noyes showed that there were only three capsules left on C.H.'s nightstand after his death.

Ames also testified that when she talked to C.H. on Skype the night of February 18, C.H. was smoking heroin and drinking. C.H. told her that the heroin tasted funny and, about 45 minutes to an hour into their conversation, C.H.'s "eyes were really low, like pretty much closed, talking to [her]" and his speech was "kind of slurred." C.H. "looked like he was getting ready to pass out" and appeared to be more high than usual. C.H.'s mother testified that she did not see C.H. the next morning and that she found him dead in his room when she came home from work. C.H. died from a drug overdose of acute fentanyl toxicity.

This evidence was enough for the jury to reasonably infer that Massena sold C.H. the drugs that killed him, and therefore the evidence was sufficient to support Massena's conviction.

## IV.

Massena's total 360-month sentence was substantively reasonable in light of the totality of the circumstances and the 18 U.S.C. § 3553(a) factors.[3] Massena argues that 240 months is sufficient, but he does not prove that 360 months is not reasonable, and thus his argument fails. *Langston*, 590 F.3d at 1236; *Irey*, 612

---

[3] The district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to deter criminal conduct, and to protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the district court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, any pertinent policy statements of the Sentencing Commission, and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a)(1), (a)(3)–(6).

F.3d at 1191 ("A district court's sentence need not be the most appropriate one, it need only be a reasonable one.").

The district court did not abuse its discretion by imposing a 360-month sentence because it properly considered the facts in the record and the § 3553(a) factors.[4]  Massena's arguments that his family viewed him as someone who could be rehabilitated and that he had a substance abuse problem of his own, while considered as part of Massena's history and characteristics, did not outweigh the district court's express reliance on "the seriousness of the offense, the fact that a death has resulted from the offense, the need to deter future criminal conduct generally and to deter [Massena] from future criminal conduct," and "the need to impose a sentence that provides just punishment."  *See Cubero*, 754 F.3d at 892 ("[T]he district court must evaluate all of the § 3553(a) factors but can attach 'great weight' to one factor over others.").

Massena's sentence was also within his guideline range.  Specifically, his 360-month sentence was 45 months from the range's 405-month outer limit, which suggests that the sentence was reasonable.  *See Hunt*, 526 F.3d at 746.  Even in light of Massena's argument that the government clouded the district court's judgment by discussing the prevalence of opioid-related deaths in Palm Beach

---

[4] Before pronouncing Massena's sentence, the district court stated that it had "considered the statements of all the parties, the presentence report, which contains the advisory guidelines, as well as the statutory factors set forth in 18 U.S.C., Section 3553(a)(1) through (7)."

County, we have no definite or firm conviction that the district court improperly weighed the § 3553(a) factors, especially in light of the district court's discussion of factors specific to Massena. *Irey*, 612 F.3d at 1190. Thus, Massena's sentence is substantively reasonable.

**AFFIRMED.**