# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3736

_____

United States of America

*Plaintiff - Appellee*

v.

Samuel B. Ford

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: April 23, 2014
Filed: May 2, 2014

_____

Before LOKEN, SMITH, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

This case is before us on remand from the Supreme Court of the United States. On June 20, 2013, we affirmed Samuel Ford's convictions for knowingly and intentionally distributing a mixture of heroin to Joseph Scolaro resulting in Scolaro's death, with the distribution occurring within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 851, and 860(a) ("Count 1"), and knowingly and

intentionally distributing a mixture containing heroin and a mixture containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851 ("Count 2"). *United States v. Ford*, 717 F.3d 612 (8th Cir. 2013), *rev'd*, 134 S. Ct. 1274, 1275 (2014). In affirming Ford's conviction on Count 1, we held that "the government presented sufficient, credible evidence to support Ford's conviction of distributing heroin that resulted in Scolaro's death and did so within a prohibited proximity of a school." *Id*. at 619. In making this determination, we concluded that "[b]ased on all the testimony before it, the jury could have rationally concluded that Scolaro died as a result of the ingestion of *multiple narcotics*, *including heroin* distributed to him by Ford." *Id*. at 621 (emphasis added).

Ford petitioned for writ of certiorari. On February 24, 2014, the Supreme Court granted certiorari, vacated our judgment, and remanded for reconsideration in light of *Burrage v. United States*, 134 S. Ct. 881 (2014). In *Burrage*, the Supreme Court "h[e]ld that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id*. at 892.

Having reconsidered Ford's appeal as the Supreme Court directed, we again affirm Ford's conviction on Count 2 but reverse his conviction on Count 1 for the government's failure to prove that the drug that Ford distributed to Scolaro was a "but-for" cause of his death. We reinstate all but Part II.A. of our prior opinion concerning whether the heroin that Ford distributed to Scolaro resulted in his death, as it is the only section that *Burrage* affects. *See Ford*, 717 F.3d at 619–21. Because the jury unanimously found that the distribution of heroin took place within 1,000 feet of the real property comprising a school, *see* 21 U.S.C. § 841(a)(1) and 860(a), we direct the district court to enter judgment on the lesser included offense of distribution of a controlled substance within 1,000 feet of a protected location. We remand for resentencing consistent with this opinion.

I. *Discussion*

As the Supreme Court explained in *Burrage*, to sustain a guilty verdict on Count 1, the government had to prove "two principal elements: (i) knowing or intentional distribution of heroin, § 841(a)(1),[1] and (ii) death caused by ('resulting from') the use of that drug, § 841(b)(1)(C)." 134 S. Ct. at 887.

In our first consideration of Ford's appeal of his conviction on Count 1, we acknowledged that "[t]he more difficult element for the government to prove was that Scolaro's death resulted from the heroin that Ford distributed." *Ford*, 717 F.3d at 619. In analyzing this element, our primary focus was whether evidence existed "that Scolaro actually injected the heroin or otherwise put it into his body." *Id*. at 620. We ultimately determined that the government proved this element, explaining:

> [T]he narcotic originally alleged to have been ingested—heroin—was absent in its original form from the decedent's system. A heroin by-product, morphine, was present, but tests regarding whether that morphine resulted from the break down of heroin were inconclusive. Based on all the testimony before it, the jury could have rationally concluded that Scolaro died as a result of the *ingestion of multiple narcotics, including heroin* distributed to him by Ford.

*Id*. at 621 (emphasis added).

But the Supreme Court instructed in *Burrage* that "where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." 134 S. Ct. at 892. In *Burrage*, "[t]wo medical experts testified

---

[1]To the extent that Ford challenges this element of Count 1, we reincorporate our prior analysis finding that sufficient evidence exists that Ford provided heroin to Scolaro the night of his death. *See Ford*, 717 F.3d at 619.

at trial regarding the cause of [the victim's] death." *Id.* at 885. One of the experts opined that "heroin 'was a contributing factor' in [the victim's] death," meaning that "[t]he heroin . . . contributed to an overall effect that caused [the victim] to stop breathing." *Id.* at 885–86. The other expert "described the cause of death as 'mixed drug intoxication' with heroin, oxycodone, alprazolam, and clonazepam all playing a 'contributing' role." *Id.* at 886. This expert "could not say whether [the victim] would have lived had he not taken the heroin, but observed that [the victim's] death would have been '[v]ery less likely.'" *Id.*

The Court held that the mandatory-minimum provision *does not* apply "when use of a covered drug supplied by the defendant contributes to, but is not a but-for cause of, the victim's death or injury." *Id.* at 885. The Court declined to adopt the government's permissive interpretation of "results from" to mean that "use of a drug distributed by the defendant need not be a but-for cause of death, nor even independently sufficient to cause death, so long as it contributes to an aggregate force (such as mixed-drug intoxication) that is itself a but-for cause of death." *Id.* at 890. According to the Court, Congress could have written § 841(b)(1)(C) to make an act or omission a cause-in-fact if it was a "substantial" or "controlling" factor in producing death; however, Congress chose instead to use language that imports but-for causality. *Id.* at 891.

In the present case, "[t]he specimen inquiry listed the cause of death as 'polydrug toxicity, with methamphetamine being the major contributing drug.'" *Ford*, 717 F.3d at 615. The medical examiner, Dr. Julie Netser, "gave the cause of death as 'polydrug toxicity.'" *Id.* at 616. Dr. Netser later "qualified her prior statement of the cause of Scolaro's death as 'polydrug toxicity, with methamphetamine being the major *contributing* drug." *Id.* (emphasis added). She was

> "confident that the cause of death was the *combination of multiple drugs*." She explained, "I don't think I took into account the fact that

-4-

morphine, a benzodiazapine, which is alprazolam, and alcohol combined are a very lethal combination." Upon further research, she felt that the most significant drugs contributing to Scolaro's death were methamphetamine, morphine, alcohol, and Xanax. Dr. Netser stated, "[I]n doing more research, I think the combination of those other [three] drugs is a much more common cause of death in a multidrug toxicity than methamphetamine is." When asked whether "[her] opinion [was] that the morphine found in [Scolaro]'s system was a contributing factor to the death," she replied, "*A contributing factor, yes*." On cross-examination, *Dr. Netser acknowledged that she could not say whether Scolaro would have died without the morphine in his system*.

*Id*. at 616 (emphases added).

A forensic toxicologist, Dr. George Behonick, "concluded that heroin could have been the source of the morphine in Scolaro's blood and that a *combination of the drugs found in Scolaro's system contributed to Scolaro's death*." *Id*. at 617 (emphasis added). Finally, Ford's expert, Dr. Henry Carson, a pathologist, testified that "methamphetamine was the major cause of death and that the presence of the *combination of morphine, codeine, Xanax, ethanol, and citalopram could also have contributed to Scolaro's death*." *Id*. at 617 (emphasis added).

As stated in our prior opinion, the government proved only that "Scolaro died as a result of the ingestion of multiple narcotics, including heroin distributed to him by Ford." *Ford*, 717 F.3d at 621. In other words, the government proved only that the heroin was a contributing factor to Scolaro's death, not that heroin was a but-for cause of Scolaro's death. Under *Burrage*, this evidence is insufficient to sustain a conviction under Count 1. 134 S. Ct. at 892.

"However, the evidence was sufficient to support a conviction on [Count 1's] lesser included offense—distribution of heroin [within 1,000 feet of a protected

location]." *United States v. Burrage*, __F.3d__, 2014 WL 1356801, at \*2 (8th Cir. Apr. 4, 2014) (citing 21 U.S.C. § 841(a)(1); *Burrage*, 134 S. Ct. at 887 n.3)).[2] We

---

[2]The verdict form shows that the jury unanimously found that the distribution of heroin took place within 1,000 feet of real property comprising a school. *See* 21 U.S.C. §§ 841(a)(1) and 860(a). In Instruction No. 14, the district court instructed the jury:

The crime of distributing a controlled substance, as charged in Count 1 of the Indictment, has two essential elements, which are:

*One*, the defendant intentionally transferred a controlled substance, to wit: heroin; and

*Two*, at the time of the transfer, the defendant knew that it was a controlled substance, to wit: heroin.

If both of these essential elements have been proved beyond a reasonable doubt, then you must find the defendant guilty of the crime charged under Count 1; otherwise, you must find the defendant not guilty of the crime charged under Count 1.

In Instruction No. 17, the district court instructed the jury:

If you find the defendant guilty of the offense charged in Count 1, you must determine whether the location at which the distribution of heroin took place was within 1,000 feet of the real property comprising a school. The 1,000-foot zone can be measured in a straight line from the school irrespective of actual pedestrian travel routes. The government does not have to prove that the defendant agreed, knew or intended that the offense would take place within 1,000 feet of a school.

We find that the jury's verdict and the accompanying instructions are sufficient to direct the district court to enter an amended judgment on the lesser included offense of distribution of a controlled substance within 1,000 feet of a protected location.

therefore "remand[] for entry of judgment and resentencing on this offense." *Id.* (citing *United States v. Plenty Arrows*, 946 F.2d 62, 66 (8th Cir.1991) ("A reviewing court has the authority to direct the entry of judgment on the lesser included offense when it finds that those elements exclusive to the greater . . . offense . . . are not supported by sufficient evidence to sustain the jury's verdict, but that there is sufficient evidence to sustain a finding of guilt on all elements of the lesser offense.") (internal quotation marks omitted); *United States v. Franklin*, 728 F.2d 994, 1000–01 (8th Cir.1984)).

### III. *Conclusion*

Accordingly, we reverse Ford's conviction with respect to Count 1, but affirm in all other respects. The district court shall enter judgment on the lesser included offense of distribution of a controlled substance within 1,000 feet of a protected location. *See* 21 U.S.C. § 841(a)(1) and 860(a). We remand for resentencing consistent with this opinion.

_____