[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10918
Non-Argument Calendar
_____

D.C. Docket No. 1:05-cr-00206-WS-B-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE EARL CARTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(October 18, 2019)

Before MARCUS, FAY and HULL, Circuit Judges.

PER CURIAM:

Willie Earl Carter, proceeding *pro se*, appeals the district court's denial of his motion to reduce his sentence.  We affirm.

### I. BACKGROUND

In 2006, a federal grand jury issued a second superseding indictment charging Carter with: (1) conspiracy to possess with intent to distribute morphine, oxycodone, hydrocodone, hydromorphone, methadone, and more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 (Count 1); (2) possession with intent to distribute morphine, in violation of 21 U.S.C. §§ 841(a)(1), 860 and 18 U.S.C. § 2 (Count 15); and (3) possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 860 and 18 U.S.C. § 2 (Count 24).  The indictment alleged that the death of Jasen Johns on November 27, 2001, resulted from the use of the controlled substances distributed during the course of the conspiracy charged in Count 1.

The government filed an information stating that Carter previously had been convicted of a felony drug offense and was therefore subject to enhanced penalties under 21 U.S.C. § 851.  On March 16, 2006, after trial, the jury found Carter guilty of Counts 1, 15, and 24.  The jury further found that: (1) the conspiracy in Count 1 involved all of the charged substances, including 50 grams or more of crack cocaine; (2) Carter was a member of the conspiracy on November 27, 2001; and (3) the death of Jasen Johns resulted from the use of the controlled substances

charged in Count 1.  Using the 2005 Guidelines Manual, the Presentence

Investigation Report ("PSI") assigned Carter a base offense level of 43, pursuant to

U.S.S.G. § 2D1.1(a)(1), because Carter had a prior conviction for a similar offense

and a death resulted from the use of the substance involved in his offense.[1]  The

PSI assigned Carter a criminal history category of I.  This resulted in a guideline

imprisonment range of life.  For the same reasons—Carter had a prior felony drug

conviction and a death resulted from the use of the controlled substance involved

in the offense—the statutory minimum penalty for Count 1, pursuant to 21 U.S.C.

§ 841(b)(1)(A), was also life imprisonment.

Carter objected to the PSI, particularly its finding that he was subject to a

statutory minimum penalty of life imprisonment and to a base offense level of 43

under the guidelines.  He argued that the evidence at trial was insufficient to find

that he participated in the conspiracy; therefore, the jury's findings as to the

amount of controlled substances involved and Johns' death did not apply to him.

He further objected that he did not have a qualifying prior felony drug conviction.

In response to Carter's objections, the probation officer stated that the PSI was

---

[1] The PSI also found that Carter was subject to a two-level increase in his base offense level, pursuant to U.S.S.G. § 2D1.1(b)(1), because a dangerous weapon was possessed.  Thus, his calculated base offense level was 45.  However, under the Guidelines, an offense level of more than 43 is to be treated as an offense level of 43.  U.S.S.G. § 5A1.1, cmt. (n.2).

3

reflective of the jury's findings on Count 1 and that she had received a certified copy of Carter's prior conviction.

At sentencing on August 4, 2006, the district court overruled Carter's objections as to Count 1, finding that the evidence presented at trial was sufficient to support Carter's conviction and the jury's finding that Johns' death resulted from the use of the controlled substance involved in the offense. It further found that Carter previously was convicted of a felony drug offense. As a result, the enhanced penalty provision of § 841(b)(1)(A) applied, and Carter was subject to a mandatory life sentence on Count 1. The district court sentenced Carter to a total imprisonment term of life, consisting of a life sentence as to Count 1 and concurrent 60-year sentences on each of Counts 15 and 24.

Carter appealed his convictions and sentences, arguing, in part, that the evidence was not sufficient to support his convictions and that he was not properly subject to a base offense level of 43 under the guidelines—or the enhanced penalty provisions of § 841(b)(1)(A)—because the drugs that killed Johns did not come from the conspiracy and he did not have a qualifying prior conviction. *United States v. Westry*, 524 F.3d 1198, 1210, 1218 (11th Cir. 2008). We affirmed, holding that the evidence supported the existence of a conspiracy and Carter's participation in it. *Id.* at 1212-13. We further held that Carter was properly subject to an enhanced penalty under the guidelines and § 841(b)(1)(A) because he had a

4

qualifying prior felony drug conviction and the evidence supported the jury's and district court's conclusion that Johns' death resulted from drugs that were involved in the offense.  *Id.* at 1220 & n.12.

In February 2019, Carter, proceeding *pro se*, filed the instant "Motion pursuant to S. 3747-First Step Act of 2018 Sec. 404. Application of Fair Sentencing Act."  He argued that his sentence should be reduced under Section 404(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) (hereinafter, "First Step Act"), because he was convicted of a covered offense before the enactment of the Fair Sentencing Act.  He argued that if he had been sentenced after the Fair Sentencing Act had taken effect, then he would have been sentenced pursuant to 21 U.S.C. § 841(b)(1)(B), which provides for a lower mandatory minimum sentence than § 841(b)(1)(A).  Further, he argued that the death enhancement—under both § 841(b)(1)(A) and U.S.S.G. § 2D1.1(a)(1)—would not apply if he were sentenced under today's laws, because the Supreme Court held in *Burrage v. United States*, 571 U.S. 204, 218-19, 134 S. Ct. 881, 892 (2014), that the "death results" penalty enhancement provision under 21 U.S.C. § 841(b) did not apply unless the drug distributed by the defendant was a "but-for" cause of death.

The district court denied Carter's motion, concluding that he was not eligible for relief under the First Step Act.  It found that, even after treating him as if

sections 2 and 3 of the Fair Sentencing Act were in effect at the time of his offense, his guideline range was still life, and the statutory maximum that he faced under 21 U.S.C. § 841(b)(l)(B) was still life "because the jury found beyond a reasonable doubt that Johns' death resulted from the use of controlled substances that Carter conspired to possess with intent to distribute."  The district court stated that Carter could not "relitigate the death enhancement" through a First Step Act motion.

On appeal, Carter argues that section 404 of the First Step Act applies to him because he was convicted of a covered offense before August 3, 2010.  As a result, he contends, the district court could have, as the First Step Act permits, "impose[d] a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time" he committed the underlying offense.  The use of the word "impose," in Carter's estimation, grants the district court broader authority than that in 18 U.S.C. § 3582(c), such that a district court could conduct a "full resentencing" in light of all relevant factors, including subsequent changes in law beyond those mandated by sections 2 and 3 of the Fair Sentencing Act.  Along those lines, he argues that the neither the guidelines nor statutory "death enhancement" would apply if he were resentenced under today's laws, because of the Supreme Court's holding in *Burrage*.

## II. DISCUSSION

We review the district court's authority to modify a sentence *de novo*. *See United States v. Phillips*, 597 F.3d 1190, 1194 n.9 (11th Cir. 2010) (analyzing whether the district court had authority to modify a sentence under 18 U.S.C. § 3582(c)(1)(B)). A district court may not modify an imprisonment sentence except under the narrow circumstances listed in § 3582(c). *See id.* at 1194-95. As relevant here, district courts are permitted to modify a term of imprisonment to the extent expressly permitted by statute. *See* 18 U.S.C. § 3582(c)(1)(B).

Prior to both the First Step Act and the Fair Sentencing Act, a person convicted of a drug trafficking offense involving at least 5 grams but less than 50 grams of crack cocaine was subject to the sentencing provisions in 21 U.S.C. § 841(b)(1)(B), while a person convicted of a similar offense involving 50 grams or more of crack cocaine was subject to the provisions of § 841(b)(1)(A). *See* 21 U.S.C. § 841(b)(1)(A), (b)(1)(B) (2006). Subsection (b)(1)(A) provided for a mandatory minimum sentence of 10 years' imprisonment, while subsection (b)(1)(B) provided for a mandatory minimum sentence of 5 years' imprisonment. *Id.*

However, both subsections provided for increased mandatory minimum sentences where certain factual predicates were present. As relevant here, both subsections provided for a mandatory life sentence where the defendant committed

7

the underlying violation after a prior conviction for a felony drug offense had become final, and death or serious bodily injury resulted from the use of the controlled substance that was the subject of the underlying violation. *Compare* 21 U.S.C. § 841(b)(1)(A) (2006), *with* 21 U.S.C. § 841(b)(1)(B) (2006).

The Fair Sentencing Act, enacted on August 3, 2010, amended 21 U.S.C. §§ 841(b)(1) and 960(b) to reduce the sentencing disparity between crack and powder cocaine. *See* Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (2010) (hereinafter "Fair Sentencing Act"). Section 2 of the Fair Sentencing Act raised the quantity of crack cocaine necessary to trigger a 10-year mandatory minimum under § 841(b)(1)(A) from 50 grams to 280 grams and the quantity necessary to trigger a 5-year mandatory minimum under § 841(b)(1)(B) from 5 grams to 28 grams. *Id.* § 2. Notably, however, the Fair Sentencing Act did not modify the factual predicates necessary to trigger a mandatory life sentence under either subsection, regardless of the quantity of drugs involved in the offense. *See generally* Fair Sentencing Act. In addition, section 3 amended 21 U.S.C. § 844(a) to eliminate a mandatory minimum sentence for simple possession of crack cocaine. *Id.* § 3. Prior to the enactment of the First Step Act, these changes did not apply retroactively to offenders sentenced before August 3, 2010. *See Dorsey v. United States*, 567 U.S. 260, 263-64, 132 S. Ct. 2321, 2326 (2012).

Section 404 of the First Step Act made the changes to mandatory minimum sentences for crack cocaine offenses in sections 2 and 3 of the Fair Sentencing Act retroactive to prisoners who were convicted on or before August 3, 2010. *See* First Step Act § 404. Section 404 authorized the court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." *Id.* § 404(b).

Here, the district court correctly denied Carter's motion for a sentence reduction. As a preliminary matter, we reject Carter's argument that the First Step Act grants federal courts the broad authority to resentence a defendant based on subsequent changes in the law beyond those mandated by sections 2 and 3 of the Fair Sentencing Act. Specifically, we reject Carter's claim that, under the First Step Act, he is effectively entitled to a *de novo* sentencing proceeding under current law—and particularly to the retroactive application of *Burrage*—simply because he was convicted of an offense covered by the Fair Sentencing Act.

The First Step Act's instruction that courts "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed" implies that Congress has expressly permitted courts to retroactively apply only the Fair Sentencing Act to defendants who qualify, while otherwise considering their sentence against the backdrop of the legal landscape at the time of their offense. *See* First Step Act § 404(b); 18 U.S.C.

9

§ 3582(c)(1)(B).  The language of the statute does not expressly provide for the retroactive application of other changes in law.  *See* First Step Act § 404; 18 U.S.C. § 3582(c)(1)(B).  The statute's express statement that sections 2 and 3 of the Fair Sentencing Act are to be applied retroactively indicates that Congress did not intend that other changes in law should similarly be applied as if they were in effect at the time of the offense.  *See United States v. Johnson*, 529 U.S. 53, 57-58, 120 S. Ct. 1114, 1118 (2000) ("When Congress provides exceptions in a statute . . . . [t]he proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.").

In addition, even if section 404 could be read to authorize the district court to consider the entire legal landscape from the time the Fair Sentencing Act was enacted in 2010, this would not include *Burrage*, which the Supreme Court decided in 2014.  *See Burrage*, 571 U.S. 204, 134 S. Ct. 881.  Accordingly, Carter is not entitled to a change in his sentence beyond any change mandated by the Fair Sentencing Act.

Applying the Fair Sentencing Act to Carter's 2006 sentencing, we conclude that the First Step Act did not authorize the district court to modify Carter's sentence.  If Carter had been sentenced in 2006 as if sections 2 and 3 of the Fair Sentencing Act were in effect, then the 50 grams of crack cocaine involved in his offense would have triggered the statutory sentencing provisions of 21 U.S.C.

10

§ 841(b)(1)(B), as opposed to those in § 841(b)(l)(A), which he was sentenced under on Count 1.  21 U.S.C. § 841(b)(1)(B)(iii) (2012).  However, because he had a previous felony drug conviction and a death resulted from the conspiracy—two findings we affirmed in Carter's direct appeal—his statutory minimum sentence would still have been life imprisonment.  *Compare* 21 U.S.C. § 841(b)(1)(B) (2012), *with* 21 U.S.C. § 841(b)(1)(A) (2012).

Because (1) the Fair Sentencing Act did not modify the predicates necessary to trigger the mandatory life sentence, regardless of the quantity of drugs involved in the offense, and (2) we affirmed on direct appeal the existence of both predicates in Carter's case, Carter's mandatory minimum of life imprisonment would have been the same regardless of whether section 2 of the Fair Sentencing Act had been in effect in 2006.  *See* 21 U.S.C. § 841(b)(1)(A), (b)(1)(B) (2006); 21 U.S.C. § 841(b)(1)(A), (b)(1)(B) (2012); *Westry*, 524 F.3d at 1220 n.12, 1220-21; *see also* First Step Act § 404(b).  Accordingly, Carter remains subject to a mandatory life sentence even in light of the First Step Act, and the district court therefore correctly concluded that it did not have the authority to modify Carter's sentence.

**AFFIRMED.**

11